1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
9                                   AT TACOMA

10    CINDY J. RODGERS,

11                  Plaintiff,                     CASE NO.    C07-5245BHS-KLS

12          v.                                     REPORT AND
                                                   RECOMMENDATION
13    MICHAEL J. ASTRUE, Commissioner of
      Social Security,                             Noted for April 18, 2008
14

15                  Defendant.

16

17          Plaintiff, Cindy J. Rodgers, has brought this matter for judicial review of the denial of her

18    applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has

19    been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

20    Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261

21    (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the

22    following Report and Recommendation for the Honorable Benjamin H. Settle's review.

23                              FACTUAL AND PROCEDURAL HISTORY

24          Plaintiff currently is 52 years old.[1] Tr. 23.  She has a high school education, three years of college

25    course work and past work experience as an engineering technical aide. Tr. 19-20, 62, 67.

26          On, February 5, 2004, plaintiff filed  applications for disability insurance and SSI benefits, alleging

27

28          [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to
      Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1  disability as of July 19, 2001, due to manic depression and a bipolar disorder. Tr. 13, 23, 45-47, 61, 198-

2  99.  Her applications were denied initially and on reconsideration. Tr. 13, 23-25, 30, 197, 200-01.  A

3  hearing was held before an administrative law judge ("ALJ") on July 10, 2006, at which plaintiff,

4  represented by counsel, appeared and testified, as did a vocational expert. Tr. 203-233.

5       On August 16, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding

6  specifically in relevant part:

7       (1)     at step one of the sequential disability evaluation process,[2] plaintiff had not
                engaged in substantial gainful activity since her alleged onset date of disability;

8

9       (2)     at step two, plaintiff had "severe" impairments consisting of depression and
                alcohol dependence;

10      (3)     at step three, none of plaintiff's impairments met or equaled the criteria of any
                of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

11

12      (4)     at step four, plaintiff had the residual functional capacity to understand,
                remember and carry out simple and complex tasks, get along with supervisors
                and co-workers and have no more than infrequent contact with the general

13              public, which precluded her from performing her past relevant work; and

14      (5)     at step five, plaintiff was capable of performing other jobs existing in significant
                numbers in the national economy.

15

16  Tr. 13-21.  Plaintiff's request for review was denied by the Appeals Council on April 13, 2007, making the

17  ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981, § 416.1481.

18       On May 11, 2007,  plaintiff filed a complaint in this Court seeking review of the ALJ's decision.

19  (Dkt. #1-#3).  The administrative record was filed with the Court on August 13, 2007. (Dkt. #11).  Plaintiff

20  argues the ALJ's decision should be reversed and remanded to the Commissioner for further administrative

21  proceedings for the following reasons:

22      (a)     the ALJ erred in evaluating the medical evidence in the record;

23      (b)     the ALJ erred in assessing plaintiff's residual functional capacity; and

24      (c)     the ALJ erred in finding plaintiff capable of performing other jobs existing in
                significant numbers in the national economy.

25  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set

26  forth below, recommends that while the ALJ's decision should be reversed, this matter should be

27

28       [2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See
    20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability
    determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

1  remanded to the Commissioner for further administrative proceedings.

2  DISCUSSION

3  This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

4  Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole

5  to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

6  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson

7  v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

8  a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

9  1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

10  one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749

11  F.2d 577, 579 (9th Cir. 1984).

12  I.      The ALJ's Evaluation of the Medical Evidence in the Record

13  The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

14  medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in

15  the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions

16  of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion

17  must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th

18  Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact

19  inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

20  "falls within this responsibility." Id. at 603.

21  In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

22  supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a

23  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

24  thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the

25  evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences

26  from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

27  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

28  either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

1   treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific

2   and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However,

3   the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler,

4   739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only

5   explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d

6   700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

7          In general, more weight is given to a treating physician's opinion than to the opinions of those who

8   do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

9   a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings"

10  or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

11  1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242

12  F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

13  opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion

14  may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id.

15  at 830-31; Tonapetyan, 242 F.3d at 1149.

16          A.      Drs. van Dam and Lewis

17          A psychiatric review technique form was completed by Janet Lewis, Ph.D., in early August 2004,

18  and affirmed by Carla van Dam, Ph.D., in early November 2004. Tr. 164.  They diagnosed plaintiff with a

19  depressive syndrome, which they found resulted in mild restrictions in activities of daily living, mild

20  difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration,

21  persistence or pace. Tr. 167, 174.  Dr. Lewis and Dr. van Dam also found there were no repeated episodes

22  of decompensation. Id.

23          A mental residual functional capacity assessment form also was completed by Dr. Lewis and

24  affirmed by Dr. van Dam in early August 2004, and early November 2004, respectively.  In the "summary

25  conclusions" section of that form, plaintiff was found to be moderately limited in her ability to perform

26  activities within a schedule, maintain regular attendance, be punctual, complete a normal weekday and

27  workweek, perform at a consistent pace, interact appropriately with the general public, and accept

28  instructions and respond appropriately to criticism from supervisors. Tr. 179.  In the form's subsequent

1  "functional capacity assessment" section, Drs. Lewis and van Dam found that plaintiff could: understand,

2  remember and carry out simple and complex tasks for a minimum of two hours at a time with limited

3  public contact; make work-related decisions and judgments; respond appropriately to supervisors and co-

4  workers, but not the general public; and cope with stress and adapt to a routine work setting on a sustained

5  basis, so long as change is infrequent. Tr. 180-81.

6          The ALJ found the opinions of Drs. Lewis and van Dam to be "consistent with the clinical record

7  and accurately describe the functional impact of the medically determinable impairments upon" plaintiff.

8  Tr. 19.  Plaintiff argues that while the ALJ made the above finding, his assessment of plaintiff's residual

9  functional capacity failed to include all of the mental limitations contained in the "summary conclusions"

10  section of the mental residual functional capacity assessment form completed by Dr. Lewis and affirmed

11  by Dr. van Dam.  The undersigned agrees.

12          As noted above, the ALJ assessed plaintiff with the following residual functional capacity:

13          . . . [T]he claimant has the residual functional capacity to understand, remember and
            carry out simple and complex tasks, and to get along [with] supervisors and co-
14          workers.  The claimant is otherwise precluded from more than infrequent contact with
            the general public. (Exhibit 10F).

15

16  Tr. 16.  As clearly can be seen, while the ALJ's assessment is consistent with the moderate limitation on

17  ability to interact appropriately with the general public found by Drs. Lewis and van Dam in the summary

18  conclusions section, none of the other moderate limitations they found in that section were adopted.  The

19  ALJ, however, gave no explanation for this.  That was error.

20          Defendant argues that the summary conclusions section of the mental residual functional capacity

21  assessment form does not constitute the actual residual functional capacity assessment.  Rather, defendant

22  asserts, "it is the narrative written by the psychologist in Section III [the "functional capacity assessment"

23  section] of that form that is the actual mental residual functional capacity assessment as it explains the

24  summary conclusions made in Section I [the "summary conclusions" section]." (Dkt. #14, p. 4 (citing

25  Program Operations Manual System ("POMS") DI 24510.060(B)(2))).  Defendant further asserts that the

26  ALJ accepted the findings contained in the "functional capacity assessment" section in accordance with

27  the above Social Security policy manual guidelines, and thus did not err here.

28          As plaintiff points out, however, POMS appears to be "strictly an internal guidance tool, providing

policy and procedural guidelines to ALJs and other staff members," and, "[a]s such, it does not prescribe

REPORT AND RECOMMENDATION
Page - 5

1    substantive rules and therefore does not carry the force and effect of law." <u>Moore v. Apfel</u>, 216 F.3d 864,

2    868-69 (9th Cir. 2000) (applying rule to Commissioner's Hearing, Appeals and Litigation Law Manual).

3    As such, it is not binding on this Court.  In addition, while the ALJ certainly is free to adopt the findings

4    contained in the "functional capacity assessment" section – as long as they are supported by the substantial

5    evidence in the record – the ALJ here did not explain why he found them to be more persuasive than those

6    more specific moderate limitations noted in the "summary conclusions" section.

7         B.     <u>Dr. Petek</u>

8         On June 28, 2002, Thomas C. Petek, Ph.D., who had been treating plaintiff for her mental health

9    issues since at least late November 2001, completed a "return to work/functional capacities" form for

10   plaintiff's employer, in which Dr. Petek indicated she would be unable to work from July 20, 2001,

11   through June 28, 2002, but could return to work on July 1, 2002. Tr. 132.  At the same time, Dr. Petek

12   wrote a letter to plaintiff's employer, in which he stated that it was appropriate for plaintiff "to return to

13   work as of July 1, 2002 for the purpose of layoff." Tr. 131.  With respect to Dr. Petek's opinion regarding

14   plaintiff's ability to work, the ALJ stated:

15            . . . Dr. Petek's clinical notes reflect he treated her only intermittently, as she had many
             missed or cancelled appointments, and he apparently relied quite heavily on the
16           subjective report of symptoms and limitations provided by the claimant, and seemed to
             uncritically accept as true most, if not all, of what the claimant reported.  Yet, as
17           explained elsewhere in this decision, there exist good reasons for questioning the
             reliability of the claimant's subjective complaints.
18
     Tr. 18.
19
         Plaintiff argues the ALJ erred in rejecting Dr. Petek's opinion on the basis that he relied on quite
20
     heavily on her own subjective report of symptoms and limitations.  As support for her argument, plaintiff
21
     cites to <u>Regennitter v. Commissioner of the Social Security Administration</u>, 166 F.3d 1294 (9th Cir. 1996),
22
     which rejected the ALJ's comment in that case that one of plaintiff's psychologists appeared to have taken
23
     the claimant's statements at face value. <u>Id.</u> at 1300.  The Ninth Circuit found the psychologist could not be
24
     faulted for believing the claimant, because he had found no indication that the claimant was malingering or
25
     deceptive. <u>Id.</u>  Plaintiff thus asserts that because in this case there is no evidence Dr. Petek found her to be
26
     malingering or deceptive, it was improper for the ALJ to reject Dr. Petek's opinion on this basis.
27
         Subsequent Ninth Circuit cases, however, expressly have held that a physician's opinion premised
28
     on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting

1 the claimant's credibility, even though the physician himself may have had no indication of malingering or

2 deceptive behavior. See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on

3 claimant's complaints where record supports ALJ in discounting claimant's credibility); see also Morgan

4 v. Commissioner of the Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (physician

5 opinion premised to large extent on claimant's own accounts of her symptoms and limitations may be

6 disregarded where those complaints have been properly discounted).

7       Here, plaintiff has not challenged the ALJ's determination that plaintiff was not fully credible with

8 respect to her symptom complaints. See Tr. 17-18.  Thus, to the extent that Dr. Petek did rely largely on

9 plaintiff's own self reports, the ALJ did not err in rejecting his opinion for this reason.  Plaintiff, though,

10 does assert that there is no evidence in the record to support the ALJ's statement that Dr. Petek appeared to

11 uncritically accept those self reports as true.  As the ALJ noted, however, many of plaintiff's appointments

12 with Dr. Petek were either missed or canceled.  Indeed, over half of those appointments were either missed

13 or cancelled, although one apparently was due to illness. Tr. 133-34.  The remainder of the appointments,

14 furthermore, contain little in the way of mental status examination or other objective clinical findings. See

15 Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if inadequately supported by

16 clinical findings).  As such, it was not unreasonable for the ALJ to conclude as he did here.

17       Plaintiff argues the ALJ did not apply the factors for evaluating medical source opinion evidence

18 set forth in 20 C.F.R. § 404.1527(d).[3] See also 20 C.F.R. § 416.927(d).  The ALJ, however, did provide

19 specific and legitimate reasons for rejecting Dr. Petek's opinion as discussed herein.  In addition, plaintiff

20 has not stated with any specificity which factors she feels the ALJ failed to apply.  The undersigned will

21 not do so for her.  Indeed, while plaintiff intimates that the ALJ did not apply any of the six factors to be

22 used in evaluating medical opinion evidence, the ALJ clearly applied at least two of them: supportability

23 and treating relationship, namely the frequency of examinations.  Accordingly, the undersigned finds the

24 ALJ did not err in applying the above regulatory factors.

25       Next, plaintiff argues Dr. Petek's notations that she reported apathy, social withdrawal, depression,

26 reduced motivation, and self-destructive behaviors are consistent with other medical evidence in the

27

28       [3]Those factors include: examining relationship; treating relationship, including the length of the treating relationship, the frequency of examinations and the nature and extent of the treating relationship; supportability; consistency; specialization; and other factors, such as understanding of the Commissioner's disability programs and familiarity with other information in the record.

REPORT AND RECOMMENDATION
Page - 7

1 record.  Specifically, plaintiff points out that Robert E. Schneider, Ph.D., who evaluated her in early

2 February 2005, noted that she had a depressed mood and social withdrawal. Tr. 183.  Plaintiff also notes

3 that Paul Michels, M.D., who evaluated her in early July 2004, commented as follows:

4     . . . [I]t seems she chooses to not follow through with many tasks due to some apathy it
      seems she is experiencing with her depression.  Interactions with others may be mildly
5     disturbed by her apathy.  Stress may cause transient mild exacerbation of her
      depressive symptoms. . . .

6 Tr. 150.  Finally, plaintiff points to her own self-report in early September 2004, that she was cutting on

7 her arm approximately "every couple of weeks." Tr. 153.

8     Plaintiff's argument here is without merit.  First, while plaintiff characterizes them as "findings",

9 Dr. Petek, as revealed above, merely noted that she herself had reported she suffered from those

10 symptoms.  However, as discussed herein, no challenge has been made to the ALJ's credibility

11 determination, and thus the ALJ was not required to take Dr. Petek's notations at face value.  In addition,

12 these reported symptoms hardly are indicative of disability, let alone specific significant work-related

13 limitations.  The same is true with respect to the notes made by Dr. Schneider, the comments of Dr.

14 Michels regarding plaintiff's apathy, and again, plaintiff's own self-report regarding her alleged cutting

15 behavior.  Lastly, although Dr. Michels' comments regarding stress may not have been solely due to

16 plaintiff's own self-report, he noted that such stress would result in only "transient mild" exacerbation of

17 her symptoms.

18     C.     Plaintiff's Ability to Cope With Stress

19     Plaintiff argues the ALJ failed to address the impact of her difficulties in dealing with her reaction

20 to stress or the pressures of work.  The undersigned agrees.  No mention of stress-related limitations were

21 made in the ALJ's assessment of plaintiff's residual functional capacity.  However, there is evidence in the

22 record that such stress indeed may have a significant impact on plaintiff's ability to work.  For example, in

23 early June 2004, Jamie E. Carter, Ph.D., an examining psychologist, found plaintiff markedly limited in

24 her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting,

25 and Dr. Schneider found her to be moderately limited in this area. Tr. 141, 184, 192.  In addition, although,

26 as noted above, Dr. Michels opined that plaintiff's stress might cause only "transient mild exacerbation of

27 her depressive symptoms," Dr. Lewis and Dr. van Dam found her capable of coping with stress and

28 adapting to a routine work setting only if change was infrequent. Tr. 150, 181.

1      Defendant argues the ALJ considered and accounted for all of plaintiff's credible limitations.  This

2   clearly is not the case, however, as nowhere in his decision did the ALJ specifically analyze her ability to

3   handle stress or the pressures of a normal work setting, despite the findings discussed above.  The other

4   limitations defendant states the ALJ did consider and accept, furthermore, do not account for the limitation

5   concerning stress and pressure tolerance.  Defendant asserts the ALJ considered all of the medical opinions

6   in the record.  This may be so in a general sense.  But, clearly, when there is substantial evidence of a

7   significant work-related limitation the ALJ does not analyze, this constitutes error.

8      It may be true that Dr. Carter estimated plaintiff would be limited to the extent noted in his report

9   for no more than nine months as pointed out by defendant.  However, this was not a basis upon which the

10   ALJ rejected Dr. Carter's findings.  Indeed, it does not appear the ALJ even rejected those findings, as his

11   decision contained little in the way of analysis thereof, and none whatsoever of his findings regarding the

12   ability to handle the pressures of a normal work setting. See Tr. 18.  Similarly, while the ALJ did discuss

13   briefly the opinion of Dr. Michels, again no analysis of the findings contained therein, including the

14   finding related to stress, were provided. Id.

15      Defendant further asserts that Dr. Schneider's moderate limitation regarding the ability to handle

16   the pressures and expectations of a work setting is consistent with the findings of Dr. Lewis and Dr. van

17   Dam, which the ALJ adopted. Although it is debatable whether the stress-related findings of Dr. Schneider

18   are consistent with those of Drs. Lewis and van Dam, as discussed above, the ALJ erred in evaluating the

19   latter's findings.  Indeed, while the ALJ stated that he in effect was adopting them, he did not include those

20   relating to stress in his assessment of plaintiff's residual functional capacity.  Accordingly, the undersigned

21   finds unpersuasive defendant's stated reasons for rejecting plaintiff's argument on this issue.

22   II.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

23      If a disability determination "cannot be made on the basis of medical factors alone at step three of

24   the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

25   assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

26   claimant's residual functional capacity assessment is used at step four to determine whether he or she can

27   do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It

28   thus is what the claimant "can still do despite his or her limitations." Id.

1
2
3
4
5
6
7

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

8

As not above, the ALJ found plaintiff had the following residual functional capacity:

9
10
11

> . . . [T]he claimant has the residual functional capacity to understand, remember and
> carry out simple and complex tasks, and to get along [with] supervisors and co-
> workers.  The claimant is otherwise precluded from more than infrequent contact with
> the general public. (Exhibit 10F).

12
13
14
15
16
17
18
19

Tr. 16.  Plaintiff, as discussed above, argues, and the undersigned agrees, that the ALJ erred in evaluating many of the moderate mental functional limitations found by Dr. Lewis and Dr. van Dam and the evidence in the record concerning plaintiff's ability to handle work-related stress.  Also as discussed above, plaintiff argues and, again, the undersigned agrees, that the ALJ failed to properly address these limitations in assessing her residual functional capacity.  While it is not entirely clear the ALJ would be required to adopt all of those limitations, because the ALJ did err in evaluating them, it cannot be said the residual functional capacity with which he assessed plaintiff was valid.  Accordingly, remand for further consideration thereof is appropriate.

20

III.    The ALJ's Step Five Analysis

21
22
23
24
25
26

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

27
28

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

1   medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

2   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported

3   by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from

4   that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th

5   Cir. 2001).

6          At the hearing, the ALJ posed a hypothetical question to the vocational expert based on the mental

7   residual functional capacity assessment form completed by Dr. Lewis and affirmed by Dr. van Dam. Tr.

8   228-29.  In response to that hypothetical question, the vocational expert testified that plaintiff probably

9   would not be able to return to her past relevant work. Tr. 229.  In addition, taking into account plaintiff's

10   age, education and past work experience, the vocational expert further testified that an individual with the

11   limitations found by Drs. Lewis and van Dam would be able to perform other jobs. Tr. 229-30.  Based on

12   the vocational expert's second response, the ALJ found plaintiff capable of performing other jobs existing

13   in significant numbers in the national economy. Tr. 20.

14          Plaintiff argues the ALJ erred in relying on the vocational expert's testimony.  Specifically,

15   plaintiff asserts the vocational expert did not explain why an individual with the moderate limitations

16   found by Dr. Lewis and Dr. van Dam would be unable to perform plaintiff's past relevant, which was

17   skilled work, while such limitations would not preclude that individual from performing the other jobs the

18   vocational expert testified could be performed, which were all at the unskilled level.  In essence, plaintiff

19   is arguing that the vocational expert did not appear to understand the ALJ's hypothetical question as it

20   related to the ability to perform other jobs, because the testimony that expert provided is contrary to the

21   general notion that skilled jobs generally have more flexible schedules than unskilled work.

22          This argument is without merit.  First, plaintiff offers no actual evidence that the vocational expert

23   did not understand what was being asked of her in this particular regard.  Nor does plaintiff provide any

24   vocational evidence or support in the law for her assertion that skilled jobs generally have more flexible

25   schedules than unskilled work.  While this possibly is true – although again nothing is before the Court to

26   actually establish that this is so – it certainly can be imagined that there are at least some skilled jobs that,

27   due to extremely demanding responsibilities or tight deadlines, require the individuals performing those

28   jobs to have even less flexibility.  In addition, only one of the moderate limitations found by Drs. Lewis

REPORT AND RECOMMENDATION
Page - 11

1    and van Dam expressly concerned the ability to perform activities within a schedule. Tr. 179.

2          Plaintiff next argues that the vocational expert's testimony that an individual who would have one

3    or more absences per month on a routine basis or who would need one or two unscheduled rest periods for

4    an hour at a time would be unable to sustain employment (Tr. 231-32), was consistent with the moderate

5    limitations identified by Dr. Lewis and Dr. van Dam.  Plaintiff, though, fails to state which such moderate

6    limitations those are, nor does the undersigned find any.  It is true that Drs. Lewis and van Dam found her

7    to be moderately limited in her ability perform activities within a schedule, maintain regular attendance, be

8    punctual, and complete a normal workday or workweek. Tr. 179.  However, there is no evidence that any

9    of these limitations actually equate to missing one or more days of work per month or the need for one or

10   two unscheduled rest periods of an hour each in duration.

11         Accordingly, the undersigned finds the ALJ did not err in finding plaintiff to be not disabled at step

12   five of the sequential disability evaluation process for these reasons.  Nevertheless, given that the ALJ did

13   err in evaluating the medical evidence in the record and in assessing plaintiff's residual functional

14   capacity, as discussed above, it is not clear the ALJ's determination that plaintiff could perform other jobs

15   existing in significant numbers in the national economy is supported by substantial evidence.  It also is not

16   exactly clear what limitations the vocational expert based her testimony on, given that the limitations

17   contained in the hypothetical question came from the mental residual functional capacity assessment form

18   completed by Dr. Lewis and affirmed by Dr. van Dam, and, as discussed above, the limitations set forth in

19   the functional capacity assessment section are not entirely the same as those in the summary conclusions

20   section.  Thus, remand for further consideration at this step is proper.

21   IV.    This Matter Should Be Remanded for Further Administrative Proceedings

22         The Court may remand this case "either for additional evidence and findings or to award benefits."

23   Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

24   except in rare circumstances, is to remand to the agency for additional investigation or explanation."

25   Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in

26   which it is clear from the record that the claimant is unable to perform gainful employment in the national

27   economy," that "remand for an immediate award of benefits is appropriate." Id.

28         Benefits may be awarded where "the record has been fully developed" and "further administrative

REPORT AND RECOMMENDATION
Page - 12

1  proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d

2  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

3      (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
        evidence, (2) there are no outstanding issues that must be resolved before a
4      determination of disability can be made, and (3) it is clear from the record that the ALJ
        would be required to find the claimant disabled were such evidence credited.

5
   <u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because
6
   issues still remain with respect to the medical evidence in the record, plaintiff's residual functional
7
   capacity and her ability to perform other jobs existing in significant numbers in the national economy, this
8
   matter should be remanded to the Commissioner for further administrative proceedings.
9
                                            <u>CONCLUSION</u>
10
         Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff
11
   was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for
12
   further administrative proceedings in accordance with the findings contained herein.
13
         Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),
14
   the parties shall have ten (10) days from service of this Report and Recommendation to file written
15
   objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those
16
   objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit
17
   imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 18, 2008**,
18
   as noted in the caption.
19
         DATED this 18th day of March, 2008.
20

21

22

                                            Karen L. Strombom
23                                          United States Magistrate Judge

24

25

26

27

28